UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHERYL L. ADAMS,

    Plaintiff,

v.                                       Case No. 1:09-cv-455
                                       Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
    _____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

Plaintiff was born on November 1, 1962 (AR 632).[1] She earned a GED, took "a couple" of college courses, and had vocational training in cosmetology (AR 633). She alleged a disability onset date of October 1, 2002 (AR 13, 636-37). Plaintiff had previous employment as a cosmetologist, factory worker, kitchen prep worker, nurse's aide, yard maintenance worker, dishwasher, restaurant hostess and cashier (AR 72-79, 634-36). Plaintiff identified her disabling conditions as carpal tunnel syndrome, heart murmur, headaches, borderline personality disorder, and bipolar disorder (AR 637-40). On April 14, 2008, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 13-24). This decision, which

---

[1] Citations to the administrative record will be referenced as (AR "page #").

was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

2

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265,

1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fourth step. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 1, 2002 (AR 15). The ALJ also found that plaintiff met the insured status requirements of the Social Security Act through March 31, 2008 (AR 15). At step two, the ALJ found that plaintiff suffered from severe impairments of: depression; cocaine-induced mood disorder; borderline personality disorder; and drug/alcohol abuse (AR 16). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 16).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) to perform light work with the following limitations:

> The claimant is restricted to simple unskilled work that does not involve maintaining intense concentration, although she can remain on task. The claimant is limited to work that requires only minimal contact/interaction with co-workers and the general public. The claimant is restricted to routine, low stress work that does not involve frequent changes or adaptations, taking initiative or making independent decisions, meeting production quotas, or keeping pace with co-workers.

(AR 17). The ALJ also found that plaintiff was able to perform her past relevant work as a dishwasher and prep cook (AR 22).

After determining that plaintiff could perform her past relevant work (i.e., that plaintiff was not disabled under step four), the ALJ nonetheless continued to review plaintiff's claim under the sequential process. At the fifth step, the ALJ determined that based upon the vocational

4

expert's testimony, plaintiff could perform a significant number of jobs in the national economy (AR 23). Specifically, plaintiff could perform approximately 21,800 jobs in the regional economy, identified as the lower peninsula of Michigan, including: light cleaner positions (13,000 jobs); dining room attendant (6,000 jobs); and laundry worker (2,800 jobs). Accordingly, the ALJ determined that plaintiff was not under a disability from October 1, 2002 through the date of the decision (AR 24).

### III. ANALYSIS

Plaintiff has raised one issue on appeal:

**Is there any substantial evidence to support the ALJ's conclusion that work is possible in spite of a fifty percent limitation resulting from non-substance related mental impairments?**

Plaintiff contends that the ALJ "has explicitly mistated [sic] the evidence of record, or in the alternative there is no substantial evidence to support the factual conclusions reached in this specific area." Plaintiff's Brief at p. 5. Plaintiff relies on a mental RFC assessment prepared by her psychiatrist, L'Tanya Haith, M.D., which concluded that "without regard to any substance abuse," plaintiff had "[a]pproximately 50 percent limitation" (AR 603). In reaching this determination, Dr. Haith, who had treated plaintiff from June 14, 2007 through November 12, 2007, observed that plaintiff was markedly limited in a number of areas, including: the ability to maintain attention and concentration for extended periods; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to accept instructions and respond

5

appropriately to criticism from supervisors; and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes (AR 601-602).

In light of Dr. Haith's findings, plaintiff objects to the following statement made by the ALJ:

> As for the opinion evidence, the record does not contain any opinions of treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision. While the clinicians at Touchstone Innovare apparently concluded that the claimant was 50% disabled, a finding of 50% disability would not prevent the claimant from performing simple unskilled work.

(AR 21). Plaintiff also points out the vocational expert's testimony that if a hypothetical person's ability to maintain attention and concentration for extended periods was impaired by 50% is translated "to be half the time" and that such a person would only "half pay attention," then such an impairment would likely preclude the 21,800 jobs identified in the ALJ's hypothetical question (AR 651, 653). The vocational expert also testified that this same conclusion would be true if a hypothetical person had such a 50% impairment in the ability to complete a normal work week without interruptions from psychologically based symptoms (AR 653-54).

Based on these opinions, the court shares plaintiff's concern that the ALJ's decision may not be supported by substantial evidence. However, the court is hampered in its ability to review this matter because the ALJ's decision did not adequately address the medical record. The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). It is unnecessary for the ALJ to address every piece of medical evidence. *See Heston*, 245 F.3d at 534-35 (ALJ's failure to discuss a doctor's report was harmless error because the reviewing court should consider all of the evidence in the record). Nevertheless, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court

to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *quoting Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir.1984). Here, the ALJ has failed to provide a meaningful articulation of the medical evidence.

The ALJ's decision, which chronicles plaintiff's medical treatment from 2002 through 2008, does not cite any specific portion of the administrative record; rather, the ALJ simply states that "[t]he medical evidence discussed below is located in Exhibit 1F" (AR 16). This single medical exhibit is a massive document, consisting of 496 pages of records generated by numerous medical providers, consultants and reviewers over the course of approximately six years (AR 107-603).[2] Furthermore, the ALJ's decision did not name the medical providers, but referred to them by labels such as: "the psychological consultative examiner" (AR 16); "a therapist" (AR 16); "a psychiatrist" (AR 16); "the therapist" (AR 18); "the clinician" (AR 18); "the attending physician" (AR 18); "the examining physician" (AR 18); "claimant's case manager" (AR 19); "the psychologist" (AR 19); "the physician" (AR 19); "the attending physician" (AR 19); "the psychiatrist" (AR 20); "the doctor" (AR 20); "the therapist" (AR 20); "the treating psychiatrist" (AR 20); "the psychologist" (AR 20); "the CMH psychiatrist" (AR 20); "the clinicians at Touchstone Innovare" (AR 21); and "the CMH psychiatrist" (AR 21). Because the ALJ has not cited plaintiff's medical history with any particularity, the court would be able to resolve this case

---

[2] The court notes that the index to the administrative record identifies all of the medical evidence as Exhibit F (AR 1).

7

at the this time only if it performed a *de novo* review of this matter to determine whether the ALJ's decision is supported by substantial evidence. It is not the purpose of this court to perform such a review of the medical evidence. *See Brainard*, 889 F.2d at 681.

Accordingly, this matter should be reversed and remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should prepare a new decision which identifies the individuals who treated plaintiff or expressed opinions regarding her medical condition, evaluate such treatment and opinions, and provide citations to the administrative record in support of the decision.

### IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).


Dated: May 28, 2010                                   /s/ Hugh W. Brenneman, Jr.
                                                      HUGH W. BRENNEMAN, JR.
                                                      United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).